UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JOSIAH HATHAWAY,
      Petitioner,

vs.                      Case No.:  1:21cv97/AW/ZCB

RICKY D. DIXON,[1]
      Respondent.

_____/

## **REPORT AND RECOMMENDATION**

Petitioner shot Clifford Deyampert below the chin.  The bullet severed Deyampert's spinal cord, paralyzing him from the chest down. Petitioner claimed he acted in self-defense.  A state court jury disagreed and convicted him of attempted second degree murder and carrying a concealed weapon.  Petitioner unsuccessfully sought state court relief on direct appeal and by filing a motion for postconviction review.  Petitioner then filed the current federal habeas corpus petition under 28 U.S.C. § 2254.  The petition raises one claim of ineffective assistance of counsel.

---

[1] As the current Secretary for the Florida Department of Corrections, Ricky D. Dixon has been automatically substituted as the Respondent in this case.  *See* Fed. R. Civ. P. 25(d).  The Clerk of Court should modify the docket to reflect this substitution.

Because Petitioner has not met the high bar for obtaining habeas relief, his petition should be denied.[2]

## I.    Background and Procedural History

The evidence at trial established that Petitioner, Josiah Hathaway, had previously dated Nicole Cox. (Doc. 6-4 at 15).  Although they were no longer dating in July of 2015, Petitioner came to Gainesville from Orlando to celebrate Cox's birthday. (*Id*. at 16).  By that time, Cox had moved on and was romantically involved with Clifford Deyampert. (*Id*. at 13).  Deyampert and Petitioner socialized and got along fine during Cox's birthday weekend. (*Id*. at 17).  At the end of the weekend, Petitioner returned to Orlando. (*Id*. at 20).  But he left his car behind in Gainesville because it had broken down. (*Id*.).

The next weekend, on Friday, July 25, 2015, Petitioner returned to Gainesville to retrieve his car. (*Id*.).  While in town, he again met up with Cox. (*Id*.).  They went to visit Deyampert who was working at a local bar that night. (*Id*. at 21).  In between serving customers, Deyampert

---

[2] An evidentiary hearing is not necessary to resolve this matter.  Rule 8(a), Rules Governing Section 2254 cases.

provided Petitioner and Cox with free drinks. (*Id*. at 22). Petitioner and Cox eventually left Deyampert's bar and went to another nightspot called Relish. (*Id*. at 24.). When Deyampert got off work around midnight, he joined Petitioner and Cox at Relish. (*Id*. at 25). At one point, Cox put Petitioner's hat on her head. (*Id*. at 27). In response, Deyampert "grabbed [the hat] off her head, said you're my girl, you're going to wear my hat," and then he tossed Petitioner's hat back to him. (*Id*.).

Petitioner was drinking heavily, and he eventually passed out at Relish. (*Id*. at 27-28). At approximately 1:30 a.m., Deyampert and Cox helped Petitioner out of Relish and into Deyampert's car. (*Id*. at 32). They drove to Cox's house. Once there, Cox and Deyampert helped Petitioner out of the car and into the house. (*Id*. at 33-34). Deyampert then went to park his car, leaving Petitioner and Cox together at the house. (*Id*.).

Once Deyampert returned from parking his car, Petitioner seemed agitated. (*Id*. at 35). Cox told Deyampert that Petitioner had tried to kiss her and that Petitioner did not enjoy seeing her with Deyampert. (*Id*.). Cox eventually told Petitioner to leave her house. (*Id*. at 38).

3

Petitioner then walked to his car and—unbeknownst to Deyampert and Cox—retrieved a gun. (*Id*. at 527). Next, Petitioner walked back to the house where he saw Cox and Deyampert on the porch talking. (*Id*. at 39-41).

Cox and Deyampert saw Petitioner standing away from the house. And they noticed that Petitioner had his "[h]ead kind of down, hands behind his back, just staring" at Deyampert. (*Id*.). Deyampert then jumped off the porch and ran towards Petitioner. (*Id*. at 42). Deyampert did not have a weapon and was not making any verbal threats to Petitioner. (*Id*. at 43-44). As Deyampert approached, Petitioner shot him below the chin. (*Id*. at 44). Deyampert did not see the gun before being shot. (*Id*.).

The shot caused Deyampert to fall to the ground. He was spitting blood and could not move his legs. (*Id*. at 46-47). Cox applied pressure to the wound while waiting for help. (*Id*. at 47). The paramedics arrived and transported Petitioner to the hospital, where he remained for several months. (*Id*. at 50). The bullet severed Deyampert's spinal cord, leaving him paralyzed from the chest down. (*Id*. at 51).

4

Petitioner was subsequently charged in Alachua County Circuit Court with attempted first degree murder (Count I) and carrying a concealed weapon (Count II). (Doc. 6-2). The case proceeded to a jury trial where the prosecution called nine witnesses, including Deyampert and Cox. (Doc. 6-4 at 2-3). The defense called three witnesses, including Petitioner who testified in his own defense. (*Id.* at 3). Petitioner admitted shooting Deyampert, but he testified that he acted in self-defense after Deyampert charged at him. (*Id.* at 529-32). Petitioner further testified that after shooting Deyampert, he called 9-1-1 and laid down the gun. (*Id.* at 532).

The jury found Petitioner guilty of the lesser included offense of attempted second degree murder on Count I and guilty as charged on Count II for carrying concealing a concealed weapon. (Doc. 6-5). The state court sentenced Petitioner to 40 years' imprisonment. (Doc. 6-6). Petitioner appealed to the First District Court of Appeal (First DCA), which affirmed on September 27, 2017. *Hathaway v. State*, 228 So. 3d 620 (Fla. 1st DCA 2017).

Next, Petitioner sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 6-11). The state trial court denied the motion. (Doc. 6-13). Petitioner appealed to the First DCA, which summarily affirmed. *Hathaway v. State*, 311 So. 3d 4 (Fla. 1st DCA 2021).

Petitioner then moved his postconviction efforts to federal court by filing the current petition for habeas corpus under 28 U.S.C. § 2254. (Doc. 1). His petition presents one claim of ineffective assistance of counsel. (Doc. 1). Respondent has filed an answer opposing habeas relief. (Doc. 6 at 35-49).

## II.    Discussion

### A. Summary of the 28 U.S.C. § 2254 standard

Before delving into Petitioner's ineffective assistance of counsel claim, the Court will summarize the standard that applies to § 2254 petitions. Under § 2254(d), a federal court may only grant habeas relief if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based

6

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). This is a "highly deferential standard," which "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). When considering a petition under § 2254(d), a federal court is not sitting as an appellate court with the mandate of correcting errors that occurred in the state court. *See Shinn v. Ramirez*, 596 U.S. 366, 377 (2022) (explaining that a federal habeas proceeding is not "a substitute for ordinary error correction through appeal") (cleaned up).

To be contrary to clearly established federal law under § 2254(d)(1), "the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up). And to meet the unreasonable application standard, "a prisoner must show far more than that the state court's decision was merely wrong or even clear error." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (cleaned up). Rather, the state court's application of federal law

7

must be "so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Id.* (cleaned up).  This standard reflects that the writ of habeas corpus is an "extraordinary remedy that guards only against extreme malfunctions in the state criminal justice systems." *Ramirez*, 596 U.S. at 377 (cleaned up).

## B. Summary of the ineffective assistance of counsel standard

Like most state prisoners who seek habeas relief, Petitioner says his trial attorney provided ineffective assistance.  Ineffective assistance of counsel claims are governed by the well-worn standard found in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on a *Strickland* claim, a petitioner must show that (1) counsel's performance was constitutionally deficient, and (2) prejudice resulted.  *Strickland*, 466 U.S. at 687.  Under the deficiency prong, the inquiry focuses on "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

Both the *Strickland* standard and the standard for relief under § 2254 are "highly deferential." *Richter*, 562 U.S. at 105. And when—in a case like the current one—"the two apply in tandem, review is doubly" deferential. *Id.* (cleaned up). The Supreme Court has warned that "habeas courts must guard against the danger of equating unreasonableness under *Strickland*['s]" deficient performance prong with "unreasonableness under § 2254(d)." *Id.* Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

As for the prejudice prong, the inquiry focuses on whether the petitioner has shown there is a "reasonable probability" that the outcome would have been different absent counsel's deficient performance. *Id.* at 694. To make the prejudice showing, the "likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

9

## C. Petitioner's ineffective assistance of counsel claim

In his sole claim for relief, Petitioner argues his attorney provided constitutionally ineffective assistance by telling jurors in opening statements that they would hear two pieces of evidence and then failing to present that evidence. According to Petitioner, there is a reasonable probability that he would have been acquitted had his attorney not made those two comments and then failed to introduce the promised evidence.

To understand Petitioner's argument, it is necessary to take a look at what Petitioner's counsel said during his opening statement. More specifically, let's take a look at what Petitioner's counsel said about the 9-1-1 recording and Deyampert's prior statements—the two comments upon which Petitioner's claim is based. Here is the relevant part of the trial transcript:

> And you're going to hear the way [Deyampert] attacked Josiah Hathaway, it was because he didn't like the way he was looking at him. He was just staring at him.
>
> You know what the most interesting part about all that is, that's not my client's story. It's Clifford Deyampert's. That's right. Every word I just told you is what Mr. Deyampert, the man who was shot, not only told law enforcement that night, not only told Mr.

Wright weeks later, but said, even months after that during depositions in this case, that's the so-called victim's story: "I attacked him because I was ticked and he was just staring." Is he going to say, "He waved a gun at me. He yelled at me"? No. "He was just staring at me."

And then Mr. Hathaway calls the police. He calls the police, he follows all of their instructions.

You'll hear from the 911 call. You know what he tells them? The exact same story Mr. Deyampert said. That's right. The story Mr. Deyampert told the night this happened and the story Mr. Hathaway told are identical. There is no difference. They all agree Mr. Hathaway was attacked for standing there.
. . . .
You were told [by the prosecutor] that Mr. Deyampert is going to tell you that he was merely walking towards the defendant. Well, by Mr. Deyampert's own version, he will tell you on the stand that he jumped off the porch 20 feet away. And in the short time it took Mr. Hathaway to pull out his firearm, when he got shot he was one to two steps from Mr. Hathaway.

You were told [by the prosecutor] that you're going to see him with his hands out. He was walking towards him like this (indicating). That's not what Mr. Deyampert is going to tell you. Mr. Deyampert's going to tell you he has no idea what he was doing with his arms, but he knew he was rushing at him. He'll tell you his exact words were "charged." He'll admit that everyone was drinking that night. Mr. Hathaway will tell you that.

11

(Doc. 6-3 at 70-76).

In his Rule 3.850 postconviction motion, Petitioner argued that counsel performed ineffectively by making the statements above yet failing to introduce evidence that Deyampert said he "attacked" Petitioner and not introducing the 9-1-1 recording. (Doc. 6-11 at 18-22). The state trial court applied *Strickland* and rejected Petitioner's argument for the following reasons:

> As far as the latter is concerned, Mr. Deyampert never confessed to attacking Defendant; and, to the extent that counsel made this assertion in his opening statement, he was relying solely upon Defendant's description of what occurred during the shooting, not any purported confession by Mr. Deyampert (and his characterization of Mr. Deyampert's pretrial statements was hyperbolic).
>
> Regardless of the words used by counsel during his opening statement, counsel did bring out during trial that Mr. Deyampert used aggressive language in expressing how he approached Defendant prior to being shot, as well as the fact that Mr. Deyampert was upset about Defendant's behavior on the night of the shooting.
>
> As for Defendant's 911 call, the call was inadmissible self-serving hearsay. *See Whitfield v. State*, 933 So. 2d 1245, 1248 (Fla. 1st DCA 2006) ("Generally, a defendant's out-of-court self-serving exculpatory statements are inadmissible hearsay"); *Burkey v. State*, 922 So .2d 1033, 1036 (Fla. 4th DCA

2006) ("When a defendant seeks to introduce his own out-of-court statement for the truth of the matter asserted, it is inadmissible hearsay"); *Barber v. State*, 576 So. 2d 825, 830 (Fla. 1st DCA 1991) ("When a defendant seeks to introduce his own prior self-serving statement for the truth of the matter stated, it is hearsay and it is not admissible").  Thus, counsel erred by telling the jury that they would hear it.  Regardless, Defendant fails to show any prejudice because the jury was able to hear Defendant's interview with Det. Grunder immediately after the shooting, as well as see and hear Defendant testify during the trial.  *See* Trial Transcript at 382-421, 498-580.  Thus, the jury was able to compare Defendant's statements which were made contemporaneous with the shooting with his testimony at trial, as well as comparing his description of events with the descriptions provided by Mr. Deyampert and Ms. Cox.  For these reasons, Defendant fails to show either error by counsel or prejudice.

(Doc. 6-13 at 3-8).

Petitioner appealed the state trial court's decision to the First DCA, which summarily affirmed. (Docs. 6-15, 6-18).  Because the state courts adjudicated Petitioner's ineffective assistance of counsel claim on the merits, Petitioner must meet the requirements of § 2254(d) to obtain habeas relief.[3]  Under § 2254(d), the question before the Court is whether

---

[3] Because the First DCA issued a summary affirmance, the Court will "look through" that unexplained decision and examine the state trial court's Rule 3.850 decision because it is the last reasoned state court

the state court's rejection of Petitioner's ineffective assistance of counsel claim was (1) contrary to or involved an unreasonable application of U.S. Supreme Court precedent, or (2) resulted in a decision that was based on an unreasonable determination of the facts presented to the state court. The answer to that question is "no" for the reasons below.

For starters, Petitioner has not satisfied the "contrary to" prong of § 2254(d)(1). That is so because the state court did not apply a rule that contradicts Supreme Court precedent. Rather, the state court applied the *Strickland* standard for ineffective assistance of counsel as required by Supreme Court precedent. Further, there is no basis for concluding that the state court arrived at a result different from Supreme Court precedent involving materially indistinguishable facts. Thus, Petitioner is not entitled to habeas relief under the "contrary to" prong of § 2254(d)(1).

---

decision addressing the issue. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Gonzalez v. Sec'y, Fla. Dep't of Corr.*, 689 F. App'x 917, 919 n.2 (11th Cir. 2017) (explaining that "the court reviewing a petitioner's federal habeas claim after a summary affirmance looks to the last reasoned decision to find the basis for a summary affirmance").

That brings us to the unreasonable application prong of § 2254(d)(1). As mentioned above, Petitioner takes issue with two things his attorney did during his opening statement: (1) the attorney's statement that the jury would hear Deyampert say that he "attacked" Petitioner before he was shot; and (2) the attorney's statement that the jury would hear the 9-1-1 recording where Petitioner explained what had happened. The state court found that neither argument met the *Strickland* standard. To satisfy the unreasonable application prong of § 2254(d)(1), Petitioner must show that the state court's application of *Strickland* to his ineffective assistance of counsel claim was "so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn*, 141 S. Ct. at 523 (cleaned up).

### 1. The state court did not unreasonably apply *Strickland* when it rejected Petitioner's claim that counsel performed ineffectively by saying that the jury would hear Deyampert say that he had "attacked" Petitioner.

Up first is the claim that counsel performed ineffectively by saying in his opening that the jury would hear Deyampert say that he "attacked" Petitioner, but then failing to introduce evidence showing that

15

Deyampert used the word "attacked." The state court concluded that Petitioner failed to show either deficient performance or prejudice on this claim. Petitioner argues that the state court's conclusion resulted from an unreasonable application of *Strickland*. The Court disagrees with Petitioner's argument.

The defense theory in this case was that Petitioner shot Deyampert in self-defense. More specifically, the theory was that Petitioner fired the gun because he reasonably feared that Deyampert was about to harm him. That was the theory advanced in the opening statement, and it was the theory aggressively pursued by Petitioner's attorney throughout the trial. Petitioner makes much of the fact that his attorney said Deyampert would admit he "attacked" Petitioner when no evidence of Deyampert using the word "attacked" was admitted. While Petitioner is correct that evidence of Deyampert using the exact word "attacked" was not introduced, he is incorrect that it makes any difference. That is so because Petitioner's counsel did introduce evidence (repeatedly) showing that Deyampert admitted to being angry and aggressively charging at Petitioner before he was shot. Here are some examples:

- Deyampert admitted to previously testifying that he had been angry with Petitioner for flirting with Cox.  (Doc. 6-4 at 80, 82).

- Deyampert admitted that he "jumped off the porch" and "charged" Petitioner before he was shot.  (*Id*. at 97).

- Deyampert admitted to telling an officer that he "charged" Petitioner shortly before he was shot.  (*Id*. at 98).

- Deyampert admitted that he previously told an officer that "prior to charging him, [Petitioner] had done nothing to provoke" Deyampert.  (*Id*.)

- Deyampert admitted that he was "only one or two steps away" from Petitioner when the shot was fired.  (*Id*.)

- Deyampert admitted to not remembering what he was doing with his hands when he "charged" at Petitioner.  (*Id*. at 100).

- An officer who responded to the shooting testified that Deyampert said he "charged" Petitioner before he was shot.  (*Id*. at 273, 280).

- A detective testified that Deyampert said he was shot after he "charged" at Petitioner."  (*Id*. at 474).

Because Petitioner's counsel introduced testimony showing that Deyampert aggressively came at Petitioner before he fired a shot, it is little significance that the word used in the testimony to describe Deyampert's approach to Petitioner was "charged" as opposed to "attacked."  Both words fit entirely with the theory of Petitioner's case—the theory advanced by Petitioner's attorney during opening statement.

17

This is not a case where an attorney promised to advance a particular theory in the opening statement and then broke that promise by failing to advance that theory throughout the trial. *Cf. Dames v. State*, 807 So.2d 756, 757 (Fla. 2d DCA 2002) (finding counsel performed ineffectively by promising in opening statement to advance a self-defense theory but then failing to introduce any evidence in support of such a theory).[4]

Even if it could be said that Petitioner's counsel erred by using the word "attacked" in his opening statement and then failing to introduce testimony showing that Deyampert used the exact same word, there is no way that such a minor difference in nomenclature prejudiced

---

[4] Petitioner has cited *Dames* in support of his argument. (Doc. 1-1 at 18). But *Dames* is easily distinguishable from the current case. In *Dames*, counsel advanced a theory of self-defense in his opening statement. *Dames*, 807 So.2d at 757-58. But counsel failed to present any evidence at trial to support a self-defense theory. *Id*. The trial court, therefore, refused to issue a self-defense jury instruction. *Id*. The court found that counsel performed ineffectively because he "stated a defense and then failed to introduce evidence in support of the defense." *Id*. That is not at all what happened in the current case. Petitioner's attorney advanced a theory of self-defense in opening statement, aggressively advanced that theory through cross examination of the prosecution's witnesses, put on evidence in support of that theory in his case-in-chief, argued it in closing, and obtained a self-defense jury instruction.

Petitioner. In other words, Petitioner has not shown a substantial likelihood that the result of his trial would have been different had counsel not used the word "attacked" in his opening statement. Petitioner's counsel advanced a self-defense theory in opening statement, presented evidence in support of that theory at trial (including testimony that Deyampert admitted to "charging" Petitioner), argued that theory in closing,[5] and the jury rejected it. There is no reason to believe the jury would have reached a different conclusion had counsel used the word "charged" instead of the word "attacked" in his opening statement. Thus, Petitioner has failed to show that the state court's rejection of this argument was "so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn*, 141 S. Ct. at 523 (cleaned up).

---

[5] It bears mentioning that in his closing argument, Petitioner's counsel argued (without objection from the prosecution) that Deyampert "attacked" Petitioner when he jumped off the porch and angrily charged at him. (Doc. 6-4 at 667-68, 670). Thus, it is not as though Petitioner's counsel advanced one theory in opening statements and then abandoned it later in the case. Instead, Petitioner's counsel announced a theory in opening statements and doggedly pursued that theory throughout the entire trial.

### 2. The state court did not unreasonably apply *Strickland* when it rejected Petitioner's claim that counsel performed ineffectively by saying that the jury would hear a recording of Petitioner's 9-1-1 call.

Petitioner has also claimed that his counsel performed ineffectively by saying in opening statement that the jury would hear a recording of Petitioner's 9-1-1 call but then failing to introduce the recording as evidence. The state court concluded that Petitioner's counsel performed deficiently by telling the jury that it would hear the 9-1-1 recording because counsel should have anticipated it would be excluded as inadmissible hearsay. (Doc. 6-13 at 8). But the state court found no prejudice from counsel's error because the jury was able to obtain the same substance as the information on the 9-1-1 recording through the testimony of other witnesses. (*Id.*). According to Petitioner, the state court's finding of no prejudice involved an unreasonable application of the *Strickland* standard. The Court is not persuaded by that argument.

Petitioner's counsel mentioned the 9-1-1 recording in his opening statement as a piece of evidence that would show that the story Petitioner would tell the jury when he testified was consistent with what he told the 9-1-1 operator immediately after the shooting. In other words,

20

Petitioner's counsel argued that the 9-1-1 recording was evidence of Petitioner's consistency and credibility regarding the events leading up to the shooting. Although the jury did not end up hearing the 9-1-1 recording, the jury did hear from multiple sources that Petitioner's version of events had remained largely consistent. Thus, despite the absence of the 9-1-1 recording, the jury had the ability to compare the statements Petitioner made at the time of the shooting to his testimony at trial.

More specifically, the jury heard from Officer Rengering—the officer who interviewed Petitioner just minutes after the shooting. (Doc. 6-4 at 259-63). Officer Rengering told the jury what Petitioner said during that interview. (*Id*. at 260-63, 265-66). And what Officer Rengering told the jury Petitioner said is consistent with what Petitioner's counsel told the jury it would hear on the 9-1-1 recording. Additionally, the jury heard from Det. Grunder who also interviewed Petitioner. (*Id*. at 377-87). Det. Grunder had recorded the interview, and it was played for the jury. (*Id*. at 382). Thus, the jury was able to hear Petitioner describe—in his own words and shortly after the shooting—

21

what had transpired prior to him pulling the trigger.  The jury also heard Petitioner's trial testimony, during which he described what had happened.  (*Id.* at 498-580).

Although the jury did not hear the 9-1-1 recording that Petitioner's counsel said it would hear (and the promise to play a recording that was inadmissible hearsay may have been deficient performance), the Court cannot say that the state court's finding that Petitioner failed to show prejudice was "so obviously wrong that its error lies beyond any possibility for fairminded disagreement."  *Shinn*, 141 S. Ct. at 523 (cleaned up).  As set forth above, the jury did hear through the testimony of witnesses (and Petitioner's audio recorded interview) what Petitioner said about the incident in the immediate aftermath.  The jury, therefore, was able to assess the consistency of Petitioner's version of events from moments after the shooting to the time of trial even though the 9-1-1 recording was not played.  There is no substantial likelihood that the jury (which heard what Petitioner said to the initial police officer, heard what Petitioner said to the detective, and heard Petitioner's testimony at trial) would have acquitted Petitioner had his attorney not mentioned the 9-1-

1 recording in his opening statement and then failed to introduce it. *See United States v. Johnson*, 531 F.2d 169, 177 (3d Cir. 1976) (finding that the petitioner failed to show that he was "prejudiced by the variance between counsel's opening statement and this conduct at trial"); *see also Hendrix v. Sec'y, Fla. Dep't of Corr.*, No. 4:21cv145/WS/HTC, 2023 WL 5206802, at \*6 (N.D. Fla. Mar. 2, 2023) (rejecting argument that counsel performed ineffectively by not introducing promised testimony because counsel had advanced the defense theory through other evidence, and there was no reason to believe the verdict would have been different had counsel not made the challenged comments in his opening statement). Accordingly, the state court did not unreasonably apply *Strickland* by finding Petitioner failed to show that prejudice resulted from his attorney's failure to introduce the 9-1-1 recording that he mentioned in opening statement.

### 3. The state court's decision was not based on an unreasonable determination of the facts.

In addition to arguing that the state court unreasonably applied *Strickland*, Petitioner claims habeas relief is warranted under § 2254(d)(2) because the state court decision was based on an

unreasonable determination of the facts. A state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). To obtain habeas relief under § 2254(d)(2), a petitioner must rebut the presumption of correctness "by clear and convincing evidence." *Ward*, 592 F.3d at 1155-56. Thus, a federal habeas court "may not characterize state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1259 (11th Cir. 2016) (cleaned up).

Applying that standard here, Petitioner has not met his burden of rebutting the presumption of correctness that applies to the state court's factual findings. The Court has reviewed the entirety of the trial transcript, as well as the other documents in the state court record. Having undertaken that task, the Court is unable to find by clear and convincing evidence that the state court's denial of Petitioner's Rule 3.850 motion was "based on" an unreasonable determination of the facts. *See McNair v. Campbell*, 416 F.3d 1291, 1313 (11th Cir. 2005) (denying habeas relief because "we cannot conclude that [the petitioner] has rebutted the presumption of correctness by clear and convincing

evidence"). Thus, Petitioner is not entitled to habeas relief under 28 U.S.C. § 2254(d)(2).

## III.  Conclusion

For the reasons above, Petitioner has not met the high bar required for habeas relief under 28 U.S.C. § 2254(d). Thus, his petition should be denied.

## IV.  Certificate of appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the Court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)

(quoting § 2253(c)(2)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his [or her] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (citing *Miller-El*, 537 U.S. at 327). The petitioner here cannot make that showing. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED** that:

1.    The petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

3.    The Clerk of Court be directed to close this case.

At Pensacola, Florida, this 13th day of February 2024.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge


### **Notice to the Parties**

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.